UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case No.: 22-14035-CR-MARTINEZ/MAYNARD


UNITED STATES OF AMERICA,

vs.

DANIEL SCOTT CROW,

      Defendant.

_____/

DEFENDANT DANIEL CROW'S MOTION FOR
DOWNWARD DEPARTURE/DOWNWARD VARIANCE SENTENCE
AND INCORPORATED SENTENCING MEMORANDUM AND EXHIBIT

      **COMES** now the Defendant, **DANIEL CROW**, by and through his undersigned attorney,

and moves this Honorable Court for a Downward Departure/Downward Variance Sentence in

this case.

      This motion is filed in conjunction with this Defendant's separately filed Objections to the

PSR, and incorporates all arguments made therein regarding the Guideline provisions, notes,

policy statements and calculations cited in that Objection.

    I.    **Important questions about the Government's decisions in this case.**

    Daniel Crow deserves a departure/variance sentence for several reasons which are set forth in

this motion. Perhaps the most fundamental reason is that the Government's decision to charge the

Defendant with the crimes of enticement and production of child pornography are at odds not only

with the facts of this case, but more importantly seem to ignore the legal reality that the very

conduct of the Defendant the Government relies on to prosecute would be considered "lawful" in

many states in our Union; for example, in states such as Georgia, Alabama, Alaska and Missouri teenagers aged 16 or 17 can lawfully engage in sexual relations with adults. See attached exhibit (*Statutory Rape: A Guide to State Laws and Reporting Requirements - U.S. Department of Health and Human Services, publication date 12/14/04*) which breaks down the laws governing consent in each state.

Thus, the decision in this case to prosecute behavior which is legal in other states is an arbitrary decision wrongfully decided by the Federal Government. This arbitrary action coupled with the varying state laws governing sexual relationships with a 16 or 17-year-old teen are factors ignored by the Sentencing Guidelines but can serve us either a departure or variance ground.

II.     The following important facts are **not** mentioned in the PSR, and would serve as grounds for a departure or variance sentence. The investigative reports provided in Discovery establish the following:

a) A jilted (adult) ex-girlfriend of the Defendant was angered by the Defendant's decision to leave her and began her own investigation as to why. The ex-girlfriend suspected (by reviewing the posts of the Defendant's social media) that the Defendant had or was having a relationship with a young woman "Victim 1."

b) Armed with this suspicion and belief that Victim 1 was under 18 years old the ex-girlfriend made a complaint to the Port St. Lucie Police Department. This local police agency began their investigation and when they learned that "Victim 1" lived in Broward County, they transferred their investigation to law enforcement there.

c) Standing alone it is questionable that an adult who was/had been in a sexual consensual relationship with a 17-year-old teenager would result in a Federal investigation, much less an indictment. But for some inexplicable reason, the ex-girlfriend's complaints made it to

the office of Homeland Security who then began their own investigation. Up until that point neither "Victim 1," now 18 years old, nor her parents (who knew the Defendant and their daughter were in a relationship) had sought any prosecution of this Defendant for his relationship.

d) "Victim 1" was a precocious 17-year-old sexually aggressive young lady fully cognizant of the sexual attraction she created in the Defendant, and used this attraction to enter into a lengthy relationship with him that centered on their mutual interests in sex and each other. (Discovery provided shows that approximately **7,000** texts were sent between the Defendant and her, of which she initiated approximately 60% of the text transmissions).

e) The precocious, mature and sexual aggressiveness of "Victim 1" is a constant theme throughout the approximate **7,000** text messages created between her and the Defendant. As further proof of her maturity and aggressiveness, the following texts were sent by "Victim 1" shortly before she met the Defendant in the Stuart hotel room:

> Victim 1: *"So like for the story can we like video call first and I'll tell it to u first and then I'll send the story…"*

> Defendant: *"Nooo send it."*

> Victim 1: *"So you kidnapped me and I'm in a room, maybe like a basement of something, filled with all these knives, chains, whips, belts, and all these things to torture me with. You've blindfolded me and I can't talk and my whole body is tied up so I can't move. I hear you walk by, a knife being sharpened, and then I feel you come closer and I feel the whip of a belt across my skin. You say not to worry, you're not going to kill me, and you're not going to use a knife on me, you're just gonna hurt me really really bad and fuck me. You name the ways you can – slow and easy or fast and crazy and that you're going to f… me however you like. You point out all the places on my body where you want to leave a bite mark or a bruise, where you want to spank me with a belt and everything. How the ropes are gonna get tighter as we go further. I feel tied so tight I can't move anything at all. I'm tied with my wrist and arms together but behind me (like my arms crossed, bent at the elbow behind me with my forearm, wrist, and hands tied together but my upper arm also tied together so that way my arms are completely immobile), my legs also tied together, (with both knees bent where my lower leg is tied to my upper leg on both legs) the rope*

*from my arms also goes around my neck, in like a criss cross thing (kinda slightly choking me if I try to move my neck. You come closer, and feel you spank me. I feel completely helpless, vulnerable, and immobile. You go on top of me, you spank the back my thighs with a belt, you tell me how you want me to be black and blue tomorrow. As I move from each time you spank me, the ropes just get tighter, I can feel it digging into my skin. You force me down and tell me not to move, you tell me if it gets too tight the ropes could even cut of circulation. You start to put your mouth on me everywhere, starting kissing and biting at the neck, you then move to my inner thigh and start licking, and biting really hard, you move up to my pussy and start eating it out, you tell me how delicious it tastes. Th…"*

Defendant: *"Wow…*

Defendant: *"Well done!* (Two clapping emojis)

Defendant: *"Excellent job, little girl"*

Victim 1: *"You read it?"*

Defendant: *"All of it – and it has definitely effected me"*

Victim 1: *"How?*

Victim 1: *"Effected u?"*

Defendant: (3 emojiis of purple devil face and two faces blowing hearts)

Victim 1: *"Wish I was there to help with that. lol)"*

(USA Discovery 0141) (See footnote 1 below)

f) Homeland Security's interview of "Victim 1" confirmed that she and the Defendant had engaged in a lengthy relationship commencing when she was 16 years old, and that after she turned 17 the couple engaged in oral sex more than once. The investigation also confirmed that when "Victim 1" was approximately four months from turning 18 years old, the victim drove herself from Broward County to a hotel in Stuart so that she and the Defendant could engage in oral sex. "Victim 1" even investigated which hotel they should use.

[1] The Defendant believes that verbatim quoting of the sexually-graphic text sent by "Victim 1" is necessary in order for this Court to fully understand the sexual maturity and aggressiveness of the victim during the time period leading up to the victim's decision to travel to Stuart, Florida for the sole purpose of having sexual relations with the Defendant on

May 22, 2020.  Such graphic recounting is distasteful to add to this pleading but is necessary. <u>United States v. Irey</u>, 612 F.3d 1160, 1167, 1168 (11th Cir. 2010)

g)  While driving to meet the Defendant in the hotel she texted him and said:

> *"Can't wait." (with two smiley-faced emojis)*
> *"So excited for today" (with two smiling emojis) (USA Discovery P.0166)*

h)  During their oral sex play, the couple jointly decided to record a portion of it.  Afterwards, in the hotel room, <u>she</u> requested the Defendant "air drop" a copy of this video from his cell phone to hers so she could replay it later. Neither the Defendant's nor the Victim's copy of the video was posted or shared with any person, blog or website.

> (The Defendant asked her in a text to make a "suggestion" as to what she wanted to experience in the hotel room, after he said intercourse would have to wait until after she turned 18 years old.). The Victim replied:

> *"Anal?"*

> *"Tie me down and do everything you said yesterday."*

> *"Leave bruises and bite marks all over me."*

> *"Suspend me from the ceiling."*

> *"Tie me down so tight that there'll be marks all over my wrists and my body."*

> *"Pin me down with force and go from behind me and spank my ass, the back of my thighs, everywhere, where it hurts but it hurts so good, and make me dripping wet and don't let me come until u want me to."*

(Government's Discovery USA 0155"

At the time these text messages were sent, and the day when the video was made in the hotel room, "Victim 1" was four months shy of her 18th birthday. The night of their hotel room tryst, when "Victim 1" was back in her home, she texted the Defendant at 8:00 p.m. and said:

> *"Miss u already (wink emoji with kiss) ... today was amazing (intense emoji). I love youuu."* (USA Discovery P0167).

The couple continued their sexual relationship well past Victim 1 turning 18 years of age.

a) Armed with this interview and hotel room video, the Homeland Security agent decided to attempt to interview the Defendant. No decision to bring federal charges had been made at this point.

b) Learning that the Defendant was out of the country on a European trip, the investigator sent a memo to Immigration officials to stop the Defendant upon his re-entry into the United States, and to seize his cell phone.

c) The Defendant re-entered the United Sates accompanied by a long-time friend and her 9-year-old son, a boy that the Defendant had helped raise and support for many years. Immigration officials seized the Defendant's cell phone but did not seek to interview the Defendant's friend nor her son. The Defendant nor his friend, nor her son were interviewed by any investigator at any time.

d) Despite sufficient time to more fully investigate the Defendant and his sexual history, the Government did not try to interview critical witnesses such as family, friends, or co-workers of the Defendant, nor did they inspect the Defendant's home computer or his possessions to see if the Defendant had any real interest in having sex with a child.

e) Upon a later examination of the contents of Defendant's seized cell phone, several videos of child pornography were found. Each video had been sent to the Defendant by a former

co-employee (Fernandez) of a cruise line They both were employed by. Also discovered were several graphic texts between the Defendant and the former cruise employee wherein the Defendant fantasized about wanting to engage in sex with a child.

f) Despite his chats with Fernandez, the Defendant <u>at no time</u> made any plans, nor took any steps to visit Thailand, Philippines or India or engaged in any activity that would lead to one. Believing he was genuinely interested in having sex with a child.

g) Armed solely with the Fernandez supplied videos, texts and the interviews of "Victim 1" and her videos (made when she was 17 years old), the Government presented its case to a Grand Jury and a three-count indictment was returned against the Defendant – enticement of a minor, production of child pornography (for the hotel room video) and possession of child pornography.

h) After his arrest, the Defendant offered to assist the Government in its investigation and prosecution of Fernandez. That offer was refused.

i) The Defendant faces a minimum mandatory sentence of 15 years in prison for Count II (Production Child Pornography), while the Sentencing Guideline range is considering more than that.

### Why did the Government pursue Counts I and II instead of III?

Given the hyper-sexual nature of this 17-year-old "victim," the Government recognized that it had the best chance for a lengthy sentence by pursuing Counts I and II, knowing that, at a minimum, the Defendant would receive a 15-year prison sentence (mandatory for Count II), whereas a sentence for possession of child pornography would be likely less than half of the mandatory minimum sentence the Defendant would receive for production of the hotel room video.

### The "Elephant in the Courtroom," and is it real?

*"Fantasy": the power or process of creating especially unrealistic or improbable mental images..."* Merriam-Webster

Believing that where there is smoke there must be fire, the Government will be seeking to increase the Defendant's sentence far beyond the 15-year mandatory minimum sentence based solely on speculation; that the Defendant's vile and graphic fantasy texts to Fernandez – standing by themselves - are proof that the Defendant is a danger to society and must be imprisoned for as long as possible. These texts are the "elephant" in this proceeding; and they have steered the Government's actions from the start. Unfortunately, the Government chose not to dig and investigate the Defendant's background deeper to see if their concern was justified. If they had looked further, they would have found no evidence to support no evidence that the Defendant had any interest in having sexual relations with children. Standing alone, one can only speculate as to whether the Defendant would have ever acted upon on his fantasies. Speculation as to possible future harm is not a legal basis upon which to lengthen a prison sentence.

## SENTENCING MEMORANDUM OF LAW

1. **The unique facts of the crimes pled to exclude this case from the "heartland" of cases upon which the Sentencing Guidelines were crafted, and a departure/variance is required.**

2. **The victim's consensual conduct merits departure from the Guidelines.**

3. **The mandatory minimum sentence required for Count II (Production), of fifteen (15) years imprisonment, is more than sufficient for the crimes the Defendant has been convicted of.**

4. **'The elephant in the courtroom' – Where a downward departure/variance sentence is justified, it would be improper to deny such departure based upon sexual fantasy chats which had nothing to do with the crimes pled to and are mere speculation as to whether he the chats represent a real danger.**

1.     **Atypical case**. The unique facts of the crimes pled to, exclude it from the "heartland" of cases upon which the Sentencing Guidelines were crafted, and a departure/variance sentence is required.

This is an "unusual" case; undersigned counsel could not find a reported case anywhere close to it.

In 1987 the United States Sentencing Commission codified and released its first sentencing guidelines (see 18USC 994(a)). Despite the evolution and changes to the Guidelines since 1987, one factor has stood inviolate – the need for a court to depart from the guidelines, and sentence outside the prescribed range, in cases deemed "atypical." See Koon v. United States, 518 U.S. 81, 93, 116 S. Ct 2035 (1996), United States v. Steele, 178 F.3d 1230, 1238, (11ᵗʰ Cir. 1999).

In its policy statement **(b) Departures**, the Sentencing Commission recognized that in cases when criminal conduct significantly differs from the norm, a departure may be warranted.

The Supreme Court has noted that:

> "... a district court's decision to vary from the advisory guidelines may attract greatest respect when the sentencing judge finds a particular case "outside" the "heartland" to which the Commission intends individual guidelines to apply." Spears v. United States, 555 U.S. 261, 129 S. Ct. 843 (2009) quoting and reaffirming Kimbrough v. United States, 552 U.S. 85, 128 S. Ct 558 (2007).

What makes Daniel Crow's case unusual and atypical? The facts (set forth in a-p supra) The above factual scenario of this case is not recognized by the Sentencing Guidelines prompting the need for a departure or variance sentence.

**III     The "victim's" conduct and decisions merit a departure/variance sentence.**

While not excusing the mistakes made by the Defendant in engaging in this relationship, and allowing sexual acts to occur, fairness demands that the victim be considered partially responsible for the violations of law committed by the Defendant.

While it is the stated goal of the Sentencing Commission to update and change its guidelines and punishment matrix as part of society's "evolution," it has failed miserably in addressing crimes where mature minors have engaged in consensual acts with adults.

The closest the Guidelines come to recognizing that a victim's conduct merits a downward departure is §5K2.10 which speaks to "victim's wrongful conduct." However, this section seems to limit its application to scenarios of violent physical assaults.

Perhaps the best evidence of how out-of-date, and incorrect, the current Guidelines are for child pornography production offenses, comes from the Sentencing Commission itself; which, in October 2021 released its own report on how courts are typically sentencing individuals convicted of producing child pornography. "**Federal Sentencing of Child Pornography: Production offenses, October 2021.**

The report "focuses" on offenders sentenced for child production offenses under §2G2.1.

The "*key findings*" of the report include that the majority of Production offenders received a variance **below** the applicable guideline range (57.2% of the 512 cases). Equally important is the finding that "*relatively few child pornography production offenders (1.2%) received a variance above the guideline range*," and *only "(0.4%) "received a departure above the applicable guideline range"* (see Page 22 of Report).

Nowhere in its report to Congress, nor in the Guidelines, does the Commission address a case anywhere near the facts of the case at bar. No mention is made on how to sentence an individual, like this Defendant, who engages in consensual sex with a mature and precocious 17-

year-old. Nor does the Guidelines express its opinion on how some state laws legalize an adult having sex with a 16 or 17-year-old should be handled. Equally silent in the report is how to apply cases where State laws allows the marriage of individuals under the age of 18.

A downward departure/variance is not only authorized here, but considering the nature and circumstance of the crimes, is required by fundamental principles of fairness and common sense.

## IV   Imposing a total sentence on the Defendant of 15 years in prison is sufficient to meet the goals of sentencing and adequately punishes the Defendant for his crimes and deter others from acting in a similar way

Few would disagree that given the totality of conduct by and between the Defendant and the victim, 15-year sentence for the Defendant's conduct towards the victim is sufficient punishment for the Defendant's acts.

Should the harsh Guidelines range be imposed as a sentence here, the Defendant would in essence be treated as if he had sexual relations with a true "child" for commercial purposes, or used trickery or force to achieve his desires.

As dramatic and harsh as a 15-year sentence here will be, the years after prison may well be even greater punishment for the Defendant. Mr. Crow will forever be "branded" as a "sex offender."

It will be a long and rocky road for Mr. Crow after 15 years in Federal prison. Where will he be able to live? Who will be willing to hire him given the label and restrictions governing computer use? In truth, Mr. Crow will serve a "life" sentence and that sad future should be a factor in determining the length of a fair prison sentence here.

Given the criteria this Court must consider in fashioning this sentence under §3553, the character letters in support of the Defendant, along with his acceptance or responsibility statement

speak in favor or this Court imposing the minimum sentence the law allows. It seems fair and reasonable to conclude that a 15-year total sentence hits the mark; sufficient but not greater than is needed.

### The "Elephant in the Courtroom."

The Defendant's fantasy chats with Fernandez are vile and disgusting. Full stop. However, they do not reflect his real desires, or intentions. Instead, they are a product of a man beset with COVID-related restrictions fueled by alcohol and marijuana. While one might speculate from these chats that the Defendant truly desires children for sexual gratification, the established facts (as opposed to speculation) prove otherwise:

a) The Defendant made no plans to travel to meet any child, nor his fellow cruise employee anywhere.

b) The Defendant never traveled to any of the countries discussed in the chats – Thailand, Philippines or India.

c) The Defendant's cell phones did not contain any form of child pornography other than that sent by his fellow employee (compared with vast collections normally discovered by police for those defendants who are truly seeking child sex).

d) The Defendant traveled to Europe, after the chats, with his longtime female friend and never sought to visit Thailand, Philippines or India.

e) The Defendant has had a long-term relationship with a young boy he refers to as his "son." The mother of the child confirmed to the U.S. Probation office that the Defendant never "*crossed the line*," with any inappropriate behavior towards this child.

f) Investigating officers did not seriously believe the Defendant was a child predator. Law enforcement never searched the Defendant's home, didn't seize or search his personal computer, and never interviewed the young boy nor his mother.

Had law enforcement taken the minimal investigatory steps, steps they normally would have taken in a case of suspected child predators; they would have been able to confirm the complete absence of any tangible evidence linking the Defendant with future acts against children.

While this Court can consider any and all parts of a Defendant's background in fashioning a sentence, it would be wrong to allow these ugly fantasy chats to unduly sway the Court to impose a sentence longer than the 15-year minimum mandatory the Defendant faces.

If the Government wishes to argue that the Defendant is a danger to society because of those texts, they need proof beyond mere speculation that the chats represent the Defendant's future intentions. They decided to end their investigation before establishing whether the chats reflect reality or mere fantasy and should not argue that the "elephant" is real.

There are other important bits of information that support the Defendant's request for a sentence of no more than 15 years in prison. This information includes reflections of his "character" established through the filed "character letters" in this case. Also, the professional opinions of noted psychologist Dr. Sheila Rapa should be given strong consideration as well.

Dr. Rapa has conducted a full psycho-sexual evaluation of the Defendant and has concluded that he poses no real danger to society once he is released from prison in this case (see filed report of Dr. Rapa).

**Federal Prison Placement** - In order to promote rehabilitation and family cohesiveness, the Defendant requests that this Court make a recommendation to the Bureau of Prisons he be placed in either Pensacola FPC, or Federal Correctional Institution Marianna.

13

Respectfully submitted,

Richard D. Kibbey, Attorney at Law

**/s/ Richard D. Kibbey**

**Law Office of Richard D. Kibbey, P.A.**
Richard D. Kibbey, Attorney at Law
Florida Bar No. 255149
416 SW Camden Avenue
Stuart, FL 34994
(772)206-3333
Kibbeylegal@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

**/s/Richard D. Kibbey**

Richard D. Kibbey, Attorney at Law

An official website of the United States government
Here's how you know

U.S. Department of Health and Human Services

MENU

# Statutory Rape: A Guide to State Laws and Reporting Requirements

ASPE    Reports    Statutory Rape: A Guide to State Laws and Reporting Requirements

**PUBLICATION DATE**    Dec 14, 2004

# Acknowledgements

Work on this project was funded by the Office of the Assistant Secretary for Planning and Evaluation in the U.S. Department of Health and Human Services under a contract to The Lewin Group. This report benefited greatly from the oversight and input of Jerry Silverman, the ASPE Project Officer.

In addition, we would like to acknowledge the assistance of a number of reviewers. Sarah Brown, Eva Klain, and Brenda Rhodes Miller provided us with valuable guidance and insights into legal issues and the policy implications of the laws and reporting requirements. Their comments improved both the content and the organization of the paper.

At The Lewin Group, Shauna Brodsky reviewed drafts and provided helpful comments.

The Authors

# Introduction

# Project Description

The U.S. Department of Health and Human Services (HHS) is concerned about the health of adolescents, including unwanted sexual contact at a young age. For example, research finds that:

- Adolescents who are sexually active at a young age are more likely to have experienced coercive sex. Almost three-quarters of women who had intercourse before age 14, and 60 percent who did so before age 15, reported having a forced sexual experience.[2]
- Half of children born to minors are fathered by adult men, and sexual partners of these adolescents are often 3 to 6 years older.[3]

These findings raised concerns among policy makers, health care providers, and advocates alike and prompted a study of alternatives for reducing coercive sexual activity. Of paramount concern is protecting young people from harm and providing vulnerable young people with the health care and other supports that they need while assisting service providers in their obligation to comply with state reporting requirements. It is important to understand how HHS grantees can meet those responsibilities within the context of their organizational missions, which may involve the provision of confidential services.

The Office of the Assistant Secretary for Planning and Evaluation (ASPE) within HHS, and its federal partner agencies, are focusing on three federally funded programs that have contact with adolescents: Title X family planning clinics, Health Resources and Services Administration-supported health centers, and child protective services. ASPE contracted with The Lewin Group, a health and human services consulting firm, to conduct a multi-phase, descriptive study to collect information about state laws, federal guidance to programs, and grantees' and local offices' practices. Lewin is assisted in the study by an advisory group composed of representatives from each of the three HHS agencies on which the study is focused: The Office of Population Affairs, the Children's Bureau, and the Health Resources and Services Administration.

One task of this project was a compilation of state laws and reporting requirements. As this document indicates, there is wide variation among laws and reporting requirements in different states. This report includes the following two sections:

- An overview of state statutory rape laws and reporting requirements.
- A summary of statutory rape and reporting laws for each state and the District of Columbia.

This report is designed to provide information useful to state and federal policymakers who are interested in how state statutes address statutory rape. It is also intended to serve as a resource for HHS grantees to better understand their legal obligations with respect to statutory rape.

# Methodology

## Terminology

Unlike most rape laws, in which force is a key element of the offense, statutory rape laws assume that all sexual activities with individuals below a certain age are coercive, even if both parties believe their participation is voluntary. Generally, statutory rape laws define the age below which an individual is legally incapable of consenting to sexual activity. For example, the Supreme Court of Idaho defined the ability to give legal consent to include: (1) the ability to recognize the potential consequences of sexual intercourse and, given this understanding, (2) the ability to make a knowing choice.[4]

## The History of Statutory Rape Laws

As Michelle Oberman discusses in *Regulating Consensual Sex with Minors: Defining a Role for Statutory Rape*, the theoretical underpinnings of statutory rape laws have changed dramatically since their inception.[5] The modern rationale for these laws is grounded in the desire to protect minors from sexual exploitation. However, when these laws originated in 13th century, the primary intent was to protect the chastity of young women.

Oberman notes that the emergence of feminism heavily influenced changes to statutory rape laws. The laws went largely unchanged until the end of the 19th century, when feminists sought to increase the age of consent to protect young women from potentially coercive relationships. As a result of these efforts, the average age of consent was raised from 12 to 18 years old.

In the 1970's, second wave feminists began to challenge the underlying principles of statutory rape laws. Although they recognized the importance of protecting vulnerable minors from coercive and exploitative sexual relationships, they wanted to ensure that the laws did not unduly restrict the sexual autonomy of young women. In addition, there was a strong push to make the laws gender-neutral.

Statutory rape laws continue to evolve in the wake of the reforms of the past 30 years. For example, the issue surfaced during debates about welfare reform in the mid 1990's when some legislators suggested that stricter enforcement of statutory rape laws could help to reduce teen pregnancy rates.

The term "statutory rape" appears throughout this paper; however few states have laws which specifically use this term. More frequently, a state's statute will include a number of offenses that have age-specific provisions addressing voluntary sexual acts and the age at which an individual can legally consent to such acts. For the purposes of this overview, "statutory rape" refers to sexual acts

that would be legal if not for the age of at least one of the parties. The individual state summaries, in **Section III** of the report, reference the specific offenses that constitute statutory rape.

In the interest of clarity, the report also uses standard labels for the participants in the offenses discussed. "Defendant" refers to the alleged perpetrator or individual who would be subject to prosecution under the statute in question. "Victim" identifies the individual on whom the act was allegedly perpetrated. Although these terms may be overly simplistic, they communicate the legal role each party plays with respect to the laws discussed in the report.[6]

## Types of Laws

This report focuses on laws that criminalize voluntary sexual acts involving a minor that would be legal if not for the age of one or more of the participants. The report does not include laws where the legality of the sexual acts is dependent on the relationship of the participants (e.g., incest, sex between teachers and students or doctors and patients). In addition, the summaries do not include laws that criminalize specific sexual behavior (e.g., sodomy, bestiality) or deal primarily with prostitution, sexual exploitation,[7] or enticement.

The laws referenced in this report generally come from two areas of states' statutes.[8]

- The descriptions of the criminal sexual acts are based on information from states' criminal or penal codes.
- Information on states' reporting requirements is usually found in the section of the code dealing with juveniles, children and families, domestic relationships, or social services.

The majority of the reporting requirements deal primarily with child abuse. Although these laws also address neglect, child maltreatment, and non-sexual abuse, this report focuses only on those sections of the laws addressing sexual abuse. In addition, the report indicates where the applicability of states' reporting requirements is limited based on the relationship between the victim and defendant (e.g., cases where the defendant is a person responsible for the care of the victim).

## Sources

Statutes from each of the 50 states and the District of Columbia were the primary sources of information for this report. Each state's statutes were accessed via the Internet—usually through the state legislature's Website. As of this writing, all of the statutes were current through at least 2003. *This report is not intended to be a legal document.* It relies on the most recent information available; however many of the state statutes referenced were unannotated. That said, every effort was made to search additional resources to learn of recent changes in the law or applicable case law and attorneys' general opinions affecting the statutes.

In addition to the actual state statutes, a number of documents and on-line resources provided valuable supplementary information. These include:

- Cornell University, Legal Information Institute. *Constitutions, Statutes, and Codes*. http://www.law.cornell.edu/statutes.html.

- Davis, N. and Twombly, J. (2000). *State Legislators' Handbook for Statutory Rape Issues*. Washington, D.C.: American Bar Association.

- Donovan, P. (1997). "Special Report: Can Statutory Rape Laws Be Effective In Preventing Adolescent Pregnancy?" *Family Planning Perspectives*, 29(1): 30-34, 40.

- Elstein, S., and Davis, N. (1997). *Sexual Relationships Between Adult Males and Young Teen Girls: Exploring the Legal and Social Responses*. New York: American Bar Association.

- National Center for Prosecution of Child Abuse (2003). *Child Abuse Crimes: Sexual Offenses*. Alexandria, VA: American Prosecutors Research Institute. http://www.ndaa-apri.org/pdf/child_abuse_crimes_sexual_offenses_state_statutes.pdf.

- National Clearinghouse on Child Abuse and Neglect Information (2002). *Compendium of Laws: Reporting Laws* (part of *Child Abuse and Neglect State Statutes Series)*. Washington, D.C.: U.S. Department of Health and Human Services, Administration for Children and Families.

- National Clearinghouse on Child Abuse and Neglect Information (2002). *Issue Paper: Current Trends in Child Maltreatment Reporting Laws* (part of *Child Abuse and Neglect State Statutes Series)*. Washington, D.C.: U.S. Department of Health and Human Services, Administration for Children and Families.

- Oberman, M. (2000). "Regulating Consensual Sex with Minors: Defining a Role for Statutory Rape," *Buffalo Law Review*, 48: 703-784.

- Phipps, C.A. (2003). "Misdirected Reform: On Regulating Consensual Sexual Activity Between Teenagers," *Cornell Journal of Law and Public Policy*, 12: 373-445.

# Endnotes

[2] The Alan Guttmacher Institute (1994). *Sex and America's Teenagers*. New York.

[3] Donovan, P. (1998). "Caught Between Teens and the Law: Family Planning Programs and Statutory Rape Reporting," *The Guttmacher Report on Public Policy*. 1(3): 5-7.

[4] *State v. Soura, 118 Idaho 232, 796 P.2d 109 (1990)*

[5] Oberman, M. (2000). "Regulating Consensual Sex with Minors: Defining a Role for Statutory Rape," *Buffalo Law Review*, 48: 703-784.

[6] There are cases where a defendant can also be a victim and vice versa. For example, in a state where individuals under a certain age cannot consent to sexual acts regardless of the age of the other party, if two individuals under the age of consent engage in sexual acts they have both been victimized and are both subject to prosecution.

[7] Many states have laws that specifically address the depiction of minors engaging in sexual acts.

[8] Although the exact title of the section and/or statute varies by state.

# Summary of Current State Laws

## Statutory Rape — Criminal Offenses

As noted above, few states use the term statutory rape in their codes. Instead, criminal codes specify the legality of specific sexual acts. The applicable laws are often embedded in the section of the code dealing with other sexual offenses (e.g., sexual assault, forcible rape).

This section summarizes some key provisions of state statutory rape laws.[9] **Subsection 1** examines the legality of sexual activities involving minors (e.g., age of consent). **Subsection 2** describes briefly the variety of offenses delineated in state statutes.

### Sexual Intercourse with Minors

States' statutory rape offenses detail the age at which an individual can legally consent to sexual activity. This section focuses on laws addressing *sexual intercourse*.[10] **Table 1** summarizes, where applicable, each state's:

- *Age of consent*. This is the age at which an individual can legally consent to sexual intercourse under any circumstances;
- *Minimum age of victim*. This is the age below which an individual cannot consent to sexual intercourse under any circumstances;
- *Age differential*. If the victim is above the minimum age and below the age of consent, the age differential is the maximum difference in age between the victim and the defendant where an individual can legally consent to sexual intercourse; and
- *Minimum age of defendant in order to prosecute.* This is the age below which an individual cannot be prosecuted for engaging in sexual activities with minors. The table notes those states in which this law only applies when the victim is above a certain age.

As the first column in **Table 1** shows, the age of consent varies by state. In the majority of states (34), it is 16 years of age. In the remaining states, the age of consent is either 17 or 18 years old (6 and 11 states, respectively).

**Table 1:**
**State Age Requirements**

| State | Age of consent | Minimum age of victim | Age differential between the victim and defendant (if victim is above minimum age) | Minimum age of defendant in order to prosecute |
|---|---|---|---|---|
| Alabama | 16 | 12 | 2 | 16 |
| Alaska | 16 | N/A | 3 | N/A |
| Arizona | 18 | 15 | 2 (defendant must be in high school and < 19) | N/A |
| Arkansas | 16 | N/A | 3 (if victim is < 14) | 20 (if victim is e 14) |
| California | 18 | 18 | N/A | N/A |
| Colorado | 17 | N/A | 4 (if victim is < 15), 10 (if victim is < 17) | N/A |
| Connecticut | 16 | N/A[11] | 2 | N/A |
| Delaware | 18[12] | 16 | N/A | N/A |
| District of Columbia | 16 | N/A | 4 | N/A |

**Note:** Some states have marital exemptions. This Table assumes the two parties are not married to one another.

| State | Age of consent | Minimum age of victim | Age differential between the victim and defendant (if victim is above minimum age) | Minimum age of defendant in order to prosecute |
|---|---|---|---|---|
| Florida | 18 | 16 | N/A | 24 (if victim is e 16) |
| Georgia | 16 | 16 | N/A | N/A |
| Hawaii | 16 | 14 | 5 | N/A |
| Idaho | 18[13] | 18 | N/A | N/A |
| Illinois | 17 | 17 | N/A | N/A |
| Indiana | 16 | 14 | N/A | 18 (if victim is e 14) |
| Iowa | 16 | 14 | 4 | N/A |
| Kansas | 16 | 16 | N/A | N/A |
| Kentucky | 16 | 16 | N/A | N/A |
| Louisiana | 17 | 13 | 3 (if victim is < 15), 2 (if victim is < 17) | N/A |
| Maine | 16 | 14[14] | 5 | N/A |
| Maryland | 16 | N/A | 4 | N/A |
| Massachusetts | 16 | 16 | N/A | N/A |

**Note:** Some states have marital exemptions. This Table assumes the two parties are not married to one another.

| State | Age of consent | Minimum age of victim | Age differential between the victim and defendant (if victim is above minimum age) | Minimum age of defendant in order to prosecute |
|---|---|---|---|---|
| Michigan | 16 | $16^{15}$ | N/A | N/A |
| Minnesota | 16 | N/A | 3 (if victim is < 13), 2 (if victim is < 16) | N/A |
| Mississippi | 16 | N/A | 2 (if victim is < 14), 3 (if victim is < 16) | N/A |
| Missouri | 17 | 14 | N/A | 21 (if victim is e 14) |
| Montana | 16 | $16^{16}$ | N/A | N/A |
| Nebraska | 16 | $16^{17}$ | N/A | 19 |
| Nevada | 16 | 16 | N/A | 18 |
| New Hampshire | 16 | 16 | N/A | N/A |
| New Jersey | 16 | $13^{18}$ | 4 | N/A |
| New Mexico | 16 | 13 | 4 | 18 (if victim is e 13) |
| New York | 17 | 17 | N/A | N/A |
| North Carolina | 16 | N/A | 4 | 12 |

**Note:** Some states have marital exemptions. This Table assumes the two parties are not married to one another.

| State | Age of consent | Minimum age of victim | Age differential between the victim and defendant (if victim is above minimum age) | Minimum age of defendant in order to prosecute |
|---|---|---|---|---|
| North Dakota | 18 | 15 | N/A | 18 (if victim is e 15) |
| Ohio | 16 | 13 | N/A | 18 (if victim is e 13) |
| Oklahoma | 16 | 14 | N/A | 18 (if victim is > 14) |
| Oregon | 18 | 15 | 3 | N/A |
| Pennsylvania | 16 | 13 | 4 | N/A |
| Rhode Island | 16 | 14 | N/A | 18 (if victim is e 14) |
| South Carolina | 16 | 14 | Illegal if victim is 14 to 16 and defendant is older than victim | N/A |
| South Dakota | 16 | $10^{19}$ | 3 | N/A |
| Tennessee | 18 | 13 | 4 | N/A |
| Texas | 17 | 14 | 3 | N/A |
| Utah | 18 | 16 | 10 | N/A |
| Vermont | 16 | 16 | N/A | 16 |

**Note:** Some states have marital exemptions. This Table assumes the two parties are not married to one another.

| State | Age of consent | Minimum age of victim | Age differential between the victim and defendant (if victim is above minimum age) | Minimum age of defendant in order to prosecute |
|---|---|---|---|---|
| Virginia | 18 | 15 | N/A | 18 (if victim is e 15) |
| Washington | 16 | N/A | 2 (if victim is < 12), 3 (if victim is < 14), 4 (if victim is < 16) | N/A |
| West Virginia | 16 | N/A | 4 (if victim is e 11) | 16, 14 (if victim is < 11) |
| Wisconsin | 18 | 18 | N/A | N/A |
| Wyoming | 16 | N/A | 4 | N/A |

**Note:** Some states have marital exemptions. This Table assumes the two parties are not married to one another.

A common misperception about statutory rape is that state codes define a single age at which an individual can legally consent to sex. Only 12 states have a *single age of consent*, below which an individual cannot consent to sexual intercourse under any circumstances, and above which it is legal to engage in sexual intercourse with another person above the age of consent. For example, in Massachusetts, the age of consent is 16.

In the remaining 39 states, other factors come into play: age differentials, minimum age of the victim, and minimum age of the defendant. Each is described below.

*Minimum age requirement*. In 27 states that do not have a single age of consent, statutes specify the age below which an individual cannot legally engage in sexual intercourse regardless of the age of the defendant (see the second column in *Table 1*). The minimum age requirements in these states range from 10 to 16 years of age. The legality of sexual intercourse with an individual who is above the minimum age requirement and below the age of consent is dependent on the difference in ages between the two parties and/or the age of the defendant.

- In New Jersey, the age of consent is 16, but individuals who are at least 13 years of age can legally engage in sexual activities if the defendant is less than 4 years older than the victim.

*Age differential.* In 27 states, the legality of engaging in sexual intercourse with minors is, at least in some circumstances, based on the difference in age between the two parties (see the third column in *Table 1*). In 12 of these states, the legality is based *solely* on the difference between the ages of the two parties. For example:

- In the District of Columbia it is illegal to engage in sexual intercourse with someone who is under the age of consent (16) if the defendant is 4 or more years older than the victim.
- Although it is less common, the age differentials in some states vary depending on the age of the victim.
- In Washington, sexual intercourse with someone who is at least 14 years of age and less than 16 years of age is illegal if the defendant is 4 or more years older than the victim. The age differential decreases in cases where the victim is less than 14 years of age (3 years), further decreasing if the victim is less than 12 years of age (2 years).

*Minimum age of defendant in order to prosecute.* Sixteen states set age thresholds for defendants, below which individuals cannot be prosecuted for engaging in sexual intercourse with minors (see the last column in *Table 1*).

- In Nevada, the age of consent is 16; however, sexual intercourse with someone who is under 16 years of age is illegal only if the defendant is at least 18 years of age (the age at which the defendant can be prosecuted).

States that set a minimum age of the defendant also tend to have minimum age requirements for the victim. Often, the age of the defendant is only relevant if the victim is above the minimum age requirement.

- In Ohio, sexual intercourse with someone under 13 years of age is illegal regardless of the age of the defendant. However, if the victim is above this minimum age requirement (13) and below the age of consent (16), it is only illegal to engage in sexual intercourse with that individual if the defendant is at least 18 years of age.

Some states define minimum age thresholds for defendants *and* age differentials.

- In North Carolina, the age of consent is 16. Sexual intercourse with someone who is under the age of consent is only illegal if the defendant is: (1) at least 4 years older than the victim *and* (2) at least 12 years of age (the age at which the defendant can be prosecuted).

## Definition of Offenses

States' laws addressing sexual activity involving minors are usually included in the section of the criminal code devoted to sexual offenses. Each state summary (**Section III**) includes a table detailing all of the offenses in the statute that deal with statutory rape.

As noted above, most states do not have laws that specifically use the term "statutory rape;" only five include the offense of statutory rape.[20] More often, state statutes include a variety of offenses addressing voluntary sexual activity involving minors. In New Jersey, for example, sexual activities involving minors is addressed in three offenses: criminal sexual contact, sexual assault, and aggravated sexual assault. The ages of the victim and the defendant as well as the nature of the sexual activity dictate under which offense the conduct falls.

In some cases, provisions addressing statutory rape are embedded in rape or sexual assault laws that typically apply to violent offenses. For example, New Hampshire defines "felonious sexual assault" as voluntary sexual penetration with someone who is at least 13 years of age and under 16 years of age, as well as acts involving the use of physical force irrespective of the age of either party. Other states have separate offenses specifically concerned with sexual crimes involving a minor. For example, Alaska's statute includes four offenses that deal specifically with the sexual abuse of a minor.

State statutes also use a variety of terms when referring to sexual acts (e.g., sexual intercourse, sexual penetration, sexual contact, indecent contact), and the definitions of these terms are not always consistent across states. The descriptions of the offenses within each state summary use the specific terms from the statutes and the summaries include footnoted definitions of these terms whenever the statutes provide them.

Understanding the different terms used in a state statute is especially important in those states where an individual may be able to legally consent to one type of sexual activity but not another. For example, Alabama's laws regarding the legality of sexual activities with individuals who are under 16 years of age and more than 12 years of age differ depending on the nature of the activities. In cases involving *sexual intercourse*, defendants over 16 years of age who are at least 2 years older than the victim are guilty of rape in the second degree. However, *sexual contact* is only illegal in cases where the defendant is at least 19 years of age.

More often though, all of the acts will be illegal (with the same age requirements), but the severity of the punishment will differ based on the type of sexual activity. In Kentucky for example, sexual activities with children under 12 years of age are illegal regardless of the age of the defendant. If the activities amount to *sexual contact*, the defendant is guilty of first degree *sexual abuse* (a Class D felony); if they amount to *sexual intercourse*, the defendant is guilty of first degree *rape* (a Class A felony).

Although the primary focus of this report is not the punishments associated with statutory rape, the offenses in each state summary are listed in ascending order based on their severity.[21] The severity of the crime is usually dependent on the nature of the sexual activities and the age of the victim and/or defendant.[22]

Depending on the state, defendants may be exempt from prosecution if they are married to the victim. In some states, marriage is a defense to all of the crimes listed (e.g., Alaska, District of Columbia, West Virginia); other states exclude some of the more aggravated offenses from this exemption (e.g., Arkansas, Louisiana, Mississippi).[23] In a few states, the criminal statutes identify age limits for the marriage exemptions.[24] Individual state summaries note those crimes that include spousal exemptions.[25]

# Child Abuse Reporting Requirements

Statutory rape reporting requirements are generally found in the sections of states' codes that deal with juveniles, children and families, domestic relationships, or social services, whereas the criminal or penal codes address the legality of specific offenses. This section of the report summarizes states' child abuse reporting requirements and the extent to which they address the issue of statutory rape. It is divided into four subsections.

- **Subsection 1** examines differences in how state statutes define child abuse and whether these definitions include statutory rape.
- **Subsection 2** discusses which individuals states designate as mandated reporters.
- **Subsection 3** details the actions mandated reporters must take upon encountering cases of child abuse.
- **Subsection 4** deals with agencies' responsibilities upon receiving reports.

### Inclusion of Statutory Rape in Reporting Requirements

State statutes vary in the extent to which statutory rape is included in the reporting requirements. In approximately one-third of the states, mandated reporting is limited to those situations where the abuse was perpetrated or allowed by a person responsible for the care of the child.[26] Consider the example of Virginia. Child abuse, a reportable offense, is defined to include any sexual act that is in violation of the state's criminal law, but it is limited to those acts perpetrated by the victim's parent or other person responsible for the child's care.

In two-thirds of the states, the statutes specify circumstances under which child abuse is a reportable offense irrespective of the defendant's relationship to the victim. In some states, the definition of child abuse includes all of the statutory rape offenses detailed in the criminal code (e.g., North

Dakota, Ohio, and Wyoming). In such cases, mandated reporters are required to notify the proper authorities if they suspect that a child has been a victim of any of these offenses. More often, states vary in terms of the applicability of the reporting requirements. The following examples illustrate the variation among these states.

In some states, there are only a few specific circumstances under which offenses not involving a person responsible for a child are considered reportable offenses. In Minnesota, for example, such a case is only a reportable offense if the reporter suspects that a defendant has sexually abused two or more children not related to the defendant in the past 10 years. Rhode Island law only requires reports of non-familial cases in two situations: (1) if the defendant is less than 18 years of age; or (2) if the mandated reporter is a physician or nurse practitioner who treats a child who is less than 12 years of age and has been infected with a sexually transmitted disease. In Iowa, the reporting requirements only pertain to cases involving someone responsible for the care of the child in question. However, a separate provision requires mandated reporters to notify the proper authorities of all cases of sexual abuse involving a victim under 12 years of age regardless of the defendant's relationship to the victim.

In other states there are fewer limits on the applicability of reporting requirements to statutory rape. Often, such limitations are based on the age of the victim and/or the defendant. For example, in California all sexual activity involving minors is illegal. However, the reporting requirements only apply to the violations of certain criminal offenses—namely, those addressing situations involving victims under 16 years of age where there is an especially large difference in the age of the two parties.[27]

In those states where the definition of child abuse does not explicitly refer to statutory rape, discrepancies between the legality of certain sexual activities and whether they are reportable offenses are more common. Take the following examples:

- **Georgia.** The reporting requirements in Georgia are less strict than the state's statutory rape laws. Even though all sexual activities involving someone who is less 16 years of age are illegal (per the criminal code), such acts only constitute a reportable offense if the defendant is more than five years older than the victim.

- **Utah.** In contrast, Utah's reporting requirements define as reportable offenses some activities that are legal according to the state's criminal code. For example, *sexual conduct* with someone who is at least 16 years of age and less than 18 years of age is only illegal if the defendant is 10 or more years older than the victim. However, *sexual abuse*, a reportable offense, is defined to include all acts of sexual intercourse, molestation, or sodomy directed towards someone under 18 years of age regardless of the age of the defendant.

- **Connecticut.** Due to some confusion on the part of providers in the state, the Attorney General's office issued an opinion addressing this issue. Specifically, the Commissioner of the Department of Children and Families sought clarification with respect to the reporting laws as they relate to cases involving defendants under 21 years of age who engage in sexual activities with teenagers under the age of consent. The Attorney General concluded that, although such relationships are illegal if the defendant is more than 2 years older than the victim, mandated reporters are not required to make a report if no other evidence of abuse exists. In justifying the opinion, the Attorney General cited the statute related to the treatment of minors for sexually transmitted diseases, which only requires providers to report cases where the minor seeking treatment is less than 13 years of age.[28]

## Mandatory Reporters

Each state's reporting requirements identify certain individuals who are required to notify the authorities of suspected abuse. Although it varies by state, *mandated reporters are typically individuals who encounter children through their professional capacity*. In Pennsylvania, the statute requires *all* individuals who encounter a case of abuse through their professional capacity to make a report. More often, a state's statute will refer to a number of specific professions.[29] Common professions include: physical and mental health providers, teachers, child care workers, legal professionals (e.g., judges, magistrates, attorneys, law enforcement officers), clergy members, and employees of state agencies that deal with children and families.[30] In addition, some states designate any individual who provides care or treatment to children as a mandatory reporter (e.g., Alabama, Missouri, Montana). In 18 states, any individual who suspects that a child has been the victim of abuse is required to notify the proper authorities.[31]

In terms of physical and/or mental health providers (e.g., physicians, nurses, psychologists, psychiatrists, dentists, surgeons, osteopaths), statutes often make specific reference to providers who treat adolescents who are pregnant or infected with sexually transmitted diseases. For example, in Texas any individual who suspects child abuse is required to notify the proper authorities. However, the law also includes more specific reporting requirements for individuals who work with children in a professional capacity, including employees of a clinic or health care facility that provides reproductive services.

In some states, a child who is pregnant or infected with a sexually transmitted disease is sufficient to cause reasonable suspicion of abuse, thereby necessitating a report. In Rhode Island, as noted above, the law requires reports of non-familial cases in two situations, one of which is if the mandated reporter is a physician or nurse practitioner who treats a child less than 12 years of age who is infected with a sexually transmitted disease. Michigan also requires medical providers to report all cases where a child under 12 years of age is pregnant or has a sexually transmitted disease. In contrast, California law states that "the pregnancy of a minor does not, in and of itself, constitute a

basis for a reasonable suspicion of sexual abuse."[32] The California Court of Appeals has similarly found that mandated reporters are not required to report cases in which a minor is found to have a sexually transmitted disease.[33]

Few states allow mandated reporters to exercise discretion in deciding which cases to report. Consider the following three exceptions:

- **Florida.** The criminal code includes a law stating that anyone 21 years of age or older who impregnates a child under 16 years of age is guilty of contributing to the delinquency or dependency of a minor. However, the reporting requirements state that health care professionals and other individuals who provide medical or counseling services to pregnant children are not required to report abuse when the only violation is impregnation of a child under the circumstances described above if such reporting would interfere with the provision of medical services.

- **Tennessee.** A 1996 law addressing statutory rape added a number of provisions to the state statutes with respect to reporting requirements. One such provision addresses cases in which a physician or other person treating pregnant minors learns that the alleged father of the patient's child is at least 4 years older than the patient and not her spouse. The provision *encourages* the provider to notify the appropriate legal authorities. However, such a report can only be made with the consent of the patient or the patient's parent, legal guardian, or custodian.

- **Wisconsin.** Health care practitioners who provide family planning services, pregnancy testing, obstetrical health care or screening, or diagnosis and treatment for sexually transmitted diseases to minors are exempted from the reporting requirements with the following exception: If providers judge that their clients are in a dangerous situation. For example, providers are required to report cases where they believe that: the victim, because of his or her age or immaturity, is incapable of understanding the nature or consequences of sexual activities; the other participant in the sexual acts is exploiting the child; or the child's participation in the sexual acts is not voluntary.

## Who to Report to

To varying degrees of specificity, all state statutes provide mandated reporters with instructions for the reporting process.[34] States generally require that mandated reporters notify the appropriate authorities within one to three days of encountering a case of suspected abuse. Mandated reporters can usually make an initial report orally, via telephone.[35] Approximately two-thirds of states require mandated reporters to follow their initial report with a more detailed written report.[36]

The reporting laws usually specify one or more agencies to which reports should be made. Mandated reporters in the majority of states may notify the state or county agency (or its designee) responsible for social or human services, children and families, or child protection.[37] In roughly two-thirds of

states, mandated reporters have the option of notifying law enforcement agencies or prosecutors' offices instead of the child protection agency.

States differ with respect to whether mandated reporters must notify an agency's state office or one of its local offices—typically the one in the local jurisdiction in which the offense took place or the victim resides.

The only states in which the child protection agency is not designated to receive reports are those with separate reporting procedures for cases not involving abuse perpetrated by a person responsible for the victim. Take the example of Louisiana. Mandated reporters must notify the local child protection unit of the Department of Social Services if they suspect abuse perpetrated by: the victim's parent or caretaker; a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker; or a person living in the same residence with the parent or caretaker as a spouse whether married or not. In all other cases, the report must be made to a local or state law enforcement agency.

West Virginia is another example of a state where the reporting requirements depend on the nature of the offense. Local child protective services agencies are responsible for receiving reports of child abuse. If the report alleges sexual abuse, the mandated reporter must also notify the Division of Public Safety and the law enforcement agency with investigative jurisdiction.

## State Response

Each state summary highlights the required response of the state and local agencies that receive reports of suspected child abuse. State statutes vary in the level of detail they provide. Generally they include requirements addressing which entities, if any, the agency receiving the initial report must notify, the timeframe for this notification, and the requirements for investigating reported abuse.

States have two primary objectives when responding to allegations of child abuse: (1) ensuring the health, safety, and well-being of the child in question, taking the necessary steps to prevent further harm and (2) conducting an investigation to determine if the reported abuse constitutes a criminal act and, when appropriate, prosecuting offenders.

In most states, the responsibility for the initial investigation of reported child abuse falls to law enforcement, the state agency responsible for child protective services, or some combination of the two.

- Approximately one-half of all states require child protective services or some other human services agency to conduct the initial investigation.
- Local law enforcement agencies are responsible for conducting the initial investigation in approximately one-fifth of states.

- Although rare, in some states either law enforcement or child protective services may conduct initial investigations.
- In the remaining states, the investigation is a cooperative effort among multiple agencies.

In some states, the responsibility for the initial investigation depends on the relationship between the victim and the defendant. In North Carolina, the county Department of Social Services is generally responsible for the initial investigation of reported abuse. However, cases alleging abuse by a person not responsible for the care of the victim must be immediately forwarded to law enforcement and the district attorney's office. Such provisions are common in states where the definition of child abuse does not include statutory rape. Consider Iowa, where statutory rape is only included in the definition of child abuse—thereby making it a reportable offense—if the victim is under 12 years of age. The agency responsible for receiving and investigating reports of child abuse (the Department of Human Services) must refer to the appropriate law enforcement agency all cases that would constitute child abuse if not for the fact that the act was perpetrated by someone not responsible for the care of the child.

Generally, law enforcement is responsible for conducting investigations into criminal acts, whereas child protective services and human services agencies are primarily concerned with the well-being of the victim. For example, in Rhode Island, the Department of Children, Youth, and Families investigates all reported abuse. If the Department's investigation indicates that the child in question has been the victim of criminal abuse, the Department transfers the case to law enforcement so that it may initiate a criminal investigation.

Increasingly, states are emphasizing interagency collaboration in child abuse investigations. Almost one-half of states statutes require the involvement of multiple agencies in investigations. There is wide variation among states in the level of cooperation mandated by their statutes. Often law enforcement and child protective services maintain their traditional roles, and the laws focus on information sharing and maximizing the relative strengths of each agency. Nevada law states that if the initial evaluation of the report, conducted by the child welfare services agency, indicates that if an investigation is warranted, the agency and law enforcement must cooperate with one another and coordinate their investigation. Similarly, Hawaii statutes require the Department of Human Services to provide police and prosecutors with any relevant information that would aid in the investigation or prosecution of child abuse cases.

States can formalize such cooperation by requiring relevant agencies to develop a memorandum of understanding (MOU) for responding to reported abuse. In Ohio, the county public children services agency (usually the Department of Job and Family Services) is responsible for preparing the MOU. The MOU must delineate the roles and responsibilities of each partner and establish processes for coordinating investigations. The agency must ensure that the following officials sign the MOU: a

juvenile judge in the county; the county peace officer, chief municipal peace officers, and local other law enforcement officers that handle abuse cases; the prosecuting attorney of the county; and the county humane officer. The primary goal of Ohio's MOU is to eliminate unnecessary and redundant interviews with victims.

Other states require that multi-disciplinary teams assume responsibility for the investigative process. The District of Columbia Code mandates that all child sexual abuse investigations be conducted by a multi-disciplinary team that must include at least one representative from: law enforcement, social services, child advocacy centers, and the city and federal prosecutors' offices. Additional individuals eligible for inclusion in multi-disciplinary teams include: representatives from the public schools, mental and physical health practitioners, child development specialists, and victim counselors. Teams' efforts are to be governed by a written protocol outlining investigative responsibilities, prosecutorial procedures, and treatment options and services for both victims and defendants.

# Endnotes

[9] Although the federal government's jurisdiction is limited, the United States Code does include statutory rape laws. See 18 U.S.C.A. § 2241 and § 2243.

[10] There are some cases where a state's laws regarding sexual intercourse are not consistent with one or more of its laws governing other types of sexual acts. For example, in South Dakota, engaging in *sexual penetration* with someone between 10 and 16 years of age is illegal unless the defendant is less than 3 years older than the victim. However, *sexual contact* with someone who is less than 16 years of age is illegal regardless of the age of the defendant (in *State v. Darby, 556 N.W.2d 311, 127 (SD 1996)*, the South Dakota Supreme Court found that these two offenses can be mutually exclusive). Such instances are identified in the appropriate state summaries.

[11] Engaging in *sexual intercourse* with someone who is less than 16 years of age is legal under certain circumstances. However, *sexual contact* with someone who is less than 15 years of age is illegal regardless of the age of the defendant.

[12] Sexual acts with individuals who are at least 16 years of age are only illegal is the defendant is 30 years of age or older.

[13] Intercourse with a *female* who is less than 18 years of age is illegal regardless of the age of the defendant. However, *sexual acts not amounting to penetration* are legal under certain circumstances in cases where the victim is at least 16 years of age.

[14] It is illegal to engage in a *sexual act* with someone who is less than 14 years of age regardless of the age of the defendant. However, *sexual contact* or *sexual touching* with someone who is less than 14 years of age is legal under certain circumstances.

[15] It is illegal to engage in a *sexual penetration* with someone who is less than 16 years of age. However, *sexual contact* with someone who is at least 13 years of age is legal under certain circumstances.

[16] *Sexual intercourse* with someone who is less than 16 years of age is illegal regardless of the age of the defendant. However, *sexual contact* with someone who is at least 14 years of age is legal under certain circumstances.

[17] Under the offense, "Debauching a minor," it is illegal to debauch or deprave morals by lewdly inducing someone less than 17 years of age to carnally know any other person.

[18] It is illegal to engage in a *sexual penetration* with someone who is less than 13 years of age regardless of the age of the defendant. However, *sexual contact* with someone who is less than 13 years of age is legal under certain circumstances.

[19] Engaging in *sexual penetration* with someone who is at least 10 years of age and less than 16 years of age is legal under certain circumstances. However, *sexual contact* with someone who is less than 16 years of age is illegal regardless of the age of the defendant.

[20] The Georgia, Mississippi, Missouri, North Carolina, and Tennessee statutes include the offense of statutory rape. The situation in which an act would be considered statutory rape differs by state. The crime of statutory rape in North Carolina is also referred to as "sexual offense of person who is 13, 14, or 15 years old." In addition to the five states listed, the Pennsylvania statutes include the offense of "statutory sexual assault." Similarly, "statutory sexual seduction" is a crime in Nevada.

[21] It is important to note that this ordering is inexact. The statutes often provide a range of sentences and this ordering does not take into account the effect of any sentencing recommendations in the statutes or other documents.

[22] Most statutes categorize crimes based on the severity of the act (e.g., 1st, 2nd, or 3rd degree rape). The state summaries note those cases where, within a specific crime, the severity varies depending on the age of the defendant. For example, Georgia law considers the crime of statutory rape to be a felony unless the victim is 14 or 15 years of age (the age of consent is 16) and the defendant is no more than 3 years older than the victim, in which case the offense is only a misdemeanor.

[23] In Arkansas, marriage is a defense to 2nd, 3rd, and 4th degree sexual assault but not rape.

[24] In South Carolina, the spousal exemption does not apply to marriages entered into by a male under 16 years of age or a female under 14 years of age.

[25] It is important to note that this report does not address state laws governing the age at which individuals can marry.

[26] Usually, persons responsible for the care of a child include parents, guardians, custodians, caretakers, or individuals living in the same house as the child. The exact definitions vary by state.

[27] Although the reporting requirements in many states make reference to one or more of the state's statutory rape laws, California is somewhat of an exception in that the reporting requirements are included in the same section of the statutes (the penal code) as the criminal laws addressing sexual activities with minors.

[28] 2002 Conn. AG Lexis 33, September 30, 2002

[29] As the primary focus of this project is reporting requirements as they affect HHS grantees, the state summaries tend to include an abbreviated list emphasizing those professions more relevant to the project. For example, although most states identify coroners and medical examiners as mandated reporters, they have been omitted from the state summaries.

[30] Most state statutes in which members of the clergy or attorneys are mandated reporters designate certain communication to be privileged and therefore exempt from these requirements. Such laws are described within the state summaries where appropriate.

[31] Almost all state statutes include a provision indicating that anyone is *allowed* to report suspected abuse.

[32] California Penal Code, §11166

[33] *Planned Parenthood Affiliates v. Van De Kamp, 226 Cal. Rptr. 361 (1986); People ex rel. Eichenberger v. Stockton Pregnancy Control Medial Clinic, Inc., 249 Cal. Rptr. 762 (1988).*

[34] Although many states' statutes also include instructions for non-mandatory reporters who wish to report suspected abuse, the state summaries do not discuss these provisions.

[35] Some state statutes require the state agency responsible for receiving reports to maintain a toll-free hotline for the sole purpose of receiving reports.

[36] Nine of these states only require a follow-up report if the agency receiving the report requests one.

[37] The exact titles of these agencies vary by state.