UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14035-CR-MARTINEZ

UNITED STATES OF AMERICA

v.

DANIEL SCOTT CROW,

                **Defendant.**
_____/

### UNITED STATES' SENTENCING MEMORANDUM

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby moves this Honorable Court to impose a sentence of 45 years, in accordance with the requirements of 18 U.S.C. § 3553.

### BACKGROUND

As a result of a tip by a concerned citizen, members of Homeland Security Investigations (HSI) began an investigation that led to the arrest of the defendant for enticement of a minor and production of child pornography. Agents interviewed the victim and learned that she met the defendant aboard a cruise ship, where they exchanged contact information (PSI ¶ 7). After the victim turned 17, she sent the defendant sexually explicit photos and videos of herself at the defendant's request, and engaged in sexual activity with the defendant (PSI ¶ 9-13).

In a series of WhatsApp messages beginning in March 2020 between the victim and the defendant, the defendant gave the victim instructions of what to wear, and instructed her to send nude photos and videos (PSI ¶ 8). Then in May 2020, the defendant and the victim had a conversation about when the victim would turn 18, and began discussing sexual activities that they could participate in together (PSI ¶ 9). On May 18, 2020, the defendant directed the victim to

make plans to meet up at a hotel the following day (PSI ¶ 10).

After some difficulty obtaining a hotel room, the defendant booked a room at the Hampton Inn & Suites Stuart – North for May 22, 2020, using the Priceline website and his personal debit card at check in. Hampton Inn & Suites records verified that the defendant checked in on May 22, 2020 (PSI ¶¶ 11-12). That day, the defendant messaged the victim, and asked her to stop at CVS to purchase personal lubricant.

A consensual search of the victim's phone revealed a video recorded on May 22, 2020, that depicted the victim performing oral sex on the defendant while the victim was under the age of 18 and the defendant was 36 years old. The defendant later distributed this video to the victim.

On April 30, 2022, the defendant returned to the United States, and was lawfully detained at the Philadelphia Airport pursuant to border search authority (PSI ¶ 15). While detained, agents seized an iPhone 12 found on the defendant's person and sent it to Department of Homeland Security Investigations (HSI) Special Agent Brian Ray for examination (PSI ¶ 15). Agents also photocopied the defendant's bank cards and identified the debit card the defendant provided at check in to the Hampton Inn and Suites on May 22, 2020.

HSI Special Agent Brian Ray lawfully examined the contents of the defendant's iPhone 12, pursuant to border search authority, and discovered the previously described 13 minute and 21 second video of Victim 1 performing oral sex on the defendant (PSI ¶ 16). Agents also found two other child sexual abuse videos depicting Victim 1 on the defendant's phone (PSI ¶ 16).

In addition to the chats and videos relating to Victim 1, Agent Ray also located chats between the defendant and another suspect (Suspect 2) in which they discuss Suspect 2's

ability to obtain children for sex (PSI ¶ 23). The defendant asks Suspect 2 where to find the girls, how much it would cost, and if Suspect 2 had done it before. Thereafter, the defendant reiterates his interest in traveling to have sex. Suspect 2 asks if he means a 12 year old, and the defendant responds, "Any and all." They specifically discuss seeking out children as young as five years old, and the defendant specifically asks if Suspect 2 would help him obtain a preschool aged male (PSI ¶ 24)

The defendant also received child pornography from Suspect 2, and directed him to provide pornography of pre-pubescent minors, often chiding Suspect 2 that the subjects were "too old." (PSI ¶ 21) In one instance, the defendant asks Suspect 2, "Have anything?" to which Suspect 2 replies, "I will see and send. Don't have now. Have a lot of videos but adults. Immature ones." The defendant replied, "Ugh boring." Consequently, the defendant received and possessed over 600 images or videos of child pornography, which included content depicting prepubescent minors under the age of 12 and the sexual abuse of toddlers (PSI ¶ 25).

On May 23, 2022, the defendant was arrested on a criminal complaint issued in this case. Then, on June 10, 2022, a federal grand jury in the Southern District of Florida returned an indictment charging the defendant with one count of enticement of a minor, in violation of Title 18, United States Code, Section 2422(b); one count of production of child pornography, in violation of Title 18, United States Code, Sections 2251(a), (e), & (2); and one count of receipt of child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1) (DE 15). On August 12, 2022, the defendant plead guilty to counts one and two of the indictment (DE 27; DE 28).

The defendant's sentencing hearing is scheduled for December 12, 2022 (DE 35). The PSI calculates the defendant's advisory sentencing guideline range as 360 months to life based on a total offense level of 42 and criminal history category of I (PSI ¶¶ 62, 65, 108).

On November 16, 2022, the defendant filed written objections to the PSI (DE 38), and a "motion for downward departure/downward variance" (DE 39), to which the government responded (DE 46; DE 49).

The United States moves this Court to impose a sentence of 45 years, in accordance with the requirements of 18 U.S.C. § 3553, for the reasons set forth below.

## ANALYSIS

**A. The 3553(a) factors support a sentence of 45 years.**

When sentencing a defendant, the Court is required to "impose a sentence sufficient, but not greater than necessary" that complies with the purposes of the statute and takes into consideration the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public, to provide the defendant with adequate services, and which considers the kinds of sentences available, the sentencing ranges, pertinent policy, the need to avoid unwarranted sentencing disparities, and to provide restitution. 18 U.S.C. § 3553(a).

    **i.**    **Nature and Circumstances of the Offense**

In this case, the defendant's conduct speaks for itself. The defendant was a man in a position of trust, acting as a cruise entertainer responsible for the care and entertainment of children. He abused that trust when he developed a personal relationship with the victim in this case. He abused that trust when he continued the relationship. He abused that trust when he used

his age and experience to develop a relationship that led to prohibited sexual activity, activities that he filmed. As stated above, the victim's cooperation with the defendant's desires is of no moment, as the gap in age and experience precludes the victim's ability to consent to the defendant's requests.

In addition to the defendant's physical acts, the Court should consider the relevant evidence found in the defendant's phone, including extensive WhatsApp conversations about the procurement and sexual abuse of children. While the defendant dismisses these chats as drug fueled fantasies, they offer a window into his mind, and provide a reason for his actions with the victim in this case (DE 39:12). Even if the Court were to dismiss the defendant's explicitly stated desires to travel to have intercourse with children, his pattern of behavior in his chats: requesting videos of sex with children from a former co-worker, and complaining when the children depicted are "too old," or "Younger- getting better," demonstrates the defendant's true interests. These texts are not fantasies, they are the direct, uncensored desires of the defendant, desires to view sexual acts performed on children. These chats demonstrate that the defendant's actions with the victim in this case were not a one-time mistake, they were not fueled by drugs or alcohol, they were calculated decisions based on his own deeply held sexual desires. The defendant challenges the severity of the guidelines, arguing that they only apply to defendants who have "sexual relations with a true "child"" but he also dismisses the physical evidence that shows his desire for the very same conduct: sexual relations with a "true child." (DE 39:11).

The defendant engaged in heinous acts, seeking out children for his own personal gratification, which of itself, is sufficient to impose a 45-year sentence based on the 3553(a) factors.

### ii. History and Characteristics of the Defendant, Specific Deterrence, and the Need to Protect the Public

The defendant's physical conduct, combined with his chats and child pornography collection, and his history of sexual abuse of minors paint a picture of a person predisposed towards an interest in minors. The defendant previously engaged in prohibited sexual conduct with an underage victim (victim 2) (PSI ¶¶ 19, 59), continued his course of conduct in this case by engaging in prohibited sexual conduct with the victim (victim 1), and searched for younger, more vulnerable victims with the help of his former colleague (PSI ¶¶ 7-14; 20-24). The defendant's conduct paints a picture of his inner desires, corroborated by his text messages seeking out younger and younger child pornography, and his discussions about where and how to obtain sex with children (PSI ¶¶ 20-24). These desires are the reason that the defendant is a danger to society, and will remain a danger to society. His conduct demonstrates a pattern of predatory behavior, fueled by an inner desire for sexual contact with young, underage children.

The defendant's history demonstrates what he is capable of, but his intent shows where he is headed, and this roadmap of intent only leads to the further victimization of children if he does not receive a meaningful, substantial sentence. The defendant is motivated by his desire for sexual contact with young, underage children, evidenced by his conduct and text messages. In the face of such evidence, a downward variance is unwarranted, if for no other reason than the overwhelming need to protect the public from any future illicit acts by the defendant. The defendant's inner illicit desires make him a danger to any child in his presence, demonstrated by his inability to curb his actions over at least a 12-year period (PSI ¶¶ 7-13, 19). Accordingly, any sentence the defendant receives must be sufficiently serious to mitigate the very real risk of re-offense, should the defendant have the opportunity. When the Court considers the nature and circumstances of this offense, against the *characteristics* of the defendant, his desires, his

6

proclivities, and then weighs those factors against the need to protect the public, and the need to provide adequate deterrence, it is abundantly clear that the guidelines accurately reflect the defendant's conduct, the risk of re-offense, and the 3553(a) factors support a 45-year sentence.

### iii. Need for the Sentence to Reflect the Seriousness of the Offense

The defendant's conduct in this case is particularly egregious, both because of his physical acts, and because he abused a position of trust to garner the victim's trust, and to manipulate her into participating in an illicit relationship for over a year. He convinced the victim that a relationship between a 16-year-old girl and an adult was appropriate and consensual, and then used her for his own personal satisfaction. Moreover, the defendant engaged in a pattern of sexually exploitative behavior by forming a similar "relationship" twelve years earlier with victim 2 when she was 17 years old (PSI ¶ 19). Like the victim in this case, the defendant normalized his relationship with victim 2, receiving oral sex, taking nude photographs, exerting his control over her, pressing her to work out and to lose weight. *Id*.

Through the defendant's pattern of conduct, the Court can clearly see the beginning of the defendant's illegal behavior and how it developed over twelve years. The defendant's WhatsApp conversations offer a window into his future behavior, depicting a deep and abiding interest in sex with young, prepubescent minors. The defendant's prurient interests dominate his life, and demonstrate that this offense was not an accident, nor a one-off instance of bad judgment. Instead, these were calculated acts, in which the defendant balanced the risk of criminal prosecution against the satisfaction of his illicit desires.

Therefore, the sentence that the Court imposes should consider both the defendant's physical acts, as well as his calculated decision to engage in the acts, with the knowledge that what he was doing was harmful and wrong. The sentence should be sufficiently serious for a person

who openly flaunts the law, and acts according to his own desires, regardless of the human and social cost he imposes on those around him.

### iv. Provide Just Punishment and Avoid Sentencing Disparities

While the defendant argues that a 15-year sentence would provide just punishment, the nature of the defendant's conduct does not support such a low sentence that is woefully out of step with other, similarly situated defendants.

Despite the defendant's objections to the law, prohibited sexual activity with a person under 18 is illegal conduct, conduct the defendant admitted to committing, and for which the sentencing guidelines appropriately impose a harsh penalty. 18 U.S.C. § 2422(b) and (DE 27; 28). While the defendant challenges whether the victim in this case was a "true child," numerous courts imposed guideline sentences for similar, or even lesser offense conduct (DE 39).

In this case, the sentencing guidelines effectively account for defendant's conduct, they include any relevant enhancements, and sufficiently encapsulate any minimum mandatory sentences, such that the defendant's sentencing guideline range is *not* overstated with respect to his offense conduct.  This is not an instance where the defendant was a minor participant in the crime, or tangentially related to its ultimate purpose.  Instead, he was the architect and sole beneficiary of this scheme, designed to bend impressionable children to his desires.

Additionally, numerous district courts have sentenced similarly situated offenders to sentences that would fall within the sentencing guideline range as calculated in this case. The defendant in *United States v. Mobley*, is perhaps the most similarly situated to the defendant in this case. In *Mobley*, the defendant was a youth pastor who abused his position of trust to prey on children. He ultimately pled guilty to four counts of production of visual depictions of sexual exploitation of minors and two counts of distribution of visual depictions of sexual exploitation of

minors for his role in filming and distributing his sexual acts with his 15-year-old victim. *United States v. Mobley*, 15CR14059 (SDFL 2015). The defense described the acts as consensual, but the Court disagreed, noting that "he did rape her because she is too young to give consent."[1] The Court then sentenced Mobley to 45 years in prison. Like the victim in *Mobley*, the victim in this case could not consent to the defendant's requests, as she was underage, and the 19-year gap between their ages creates a rebuttable presumption that the defendant exerted undue influence over the victim. U.S.S.G. § 2G1.3 n.3(b).

Additionally, both *Mobley*, and the defendant in this case, used their positions of trust to perpetrate their crimes, requiring a sentence commensurate with such egregious behavior. Just as *Mobley's* conduct warranted a sentence of 45 years, the defendant's enticement and sexual abuse of the victim, as well as his exploitation of his position of trust as a cruise entertainer responsible for the care of children, mandates a 45-year sentence to avoid an unwarranted sentencing disparity.

In *United States v. VanGelder*, U.S. District Court Judge Steven D. Merryday of the middle district of Florida sentenced the defendant to 30 years for attempted enticement, despite his having no physical contact with a child. *United States v. VanGelder*, 21CR201 (MDFL 2021). The defendant was arrested after communicating with an undercover FBI agent in an attempt to have sex with the undercover agent's fictional child. During the conversations, the defendant made suggestions about how he could carry out the act, much like the conversations the defendant had with his former co-worker in which he describes the ways he would perform prohibited sexual acts on children his co-worker procured.

In *United States v. Antczak*, the defendant received a similar sentence to the defendant in *VanGelder*. *United States v. Antczak*, 16CR60264 (SDFL 2016). Antczak contacted an undercover

---

[1] https://archive.tcpalm.com/news/crime/martin-county/former-youth-pastor-at-stuarts-grace-place-gets-45-years-in-child-porn-case-2e03adc2-cd4f-4a4a-e053--379242011.html/ (May 12, 2016).

agent in an online forum and began chatting with the agent about meeting up with him and his minor daughter to have sex. Antczak discussed the age of the child and provided a graphic description of what he intended to do to the child, and while his conduct was limited to text messages with an undercover agent, he also received a 30-year prison sentence.

Finally, in *United States v. Sibley*, the defendant chatted with minors while playing video games, enticing them to send sexually explicit pictures and videos, and on two occasions traveled with the hope of having sex with a minor. *United States v. Sibley*, 17CR53 (NDIA 2017). U.S. District Court Chief Judge Leonard T. Strand sentenced Sibley to 30 years in prison.

The defendant's conduct in this case is strikingly similar to the defendants in *Mobley*, *VanGelder*, *Antczak*, and *Sibley*, and despite the defendant's minimization of his conduct, a 15-year sentence would actually create a sentencing disparity as compared to these similarly situated defendants. However, unlike *VanGelder*, *Antczak*, and *Sibley*, who only interacted with their victims or the parents of their victims, online, the defendant acted on his fantasies, physically victimizing those around him, in addition to seeking out videos on the internet. Therefore, the defendant's conduct, in comparison to other similar, and arguably less aggressive defendants who each received 30-year sentences, demonstrates that the sentencing guidelines are appropriate and a 45-year sentence, consistent with the sentence in *Mobley*, is necessary in this case to ensure just punishment and to avoid unnecessary sentencing disparities among similarly situated defendants.

## CONCLUSION

Based on the foregoing, the United States respectfully requests the Court to impose a sentence of 45 years, in accordance with the requirements of 18 U.S.C. § 3553.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: /s/ *Christopher H. Hudock*
Christopher H. Hudock
Assistant United States Attorney
Florida Bar No.92454
101 South U.S. 1, Suite 3100
Fort Pierce, FL 34950
Telephone: (772) 466-0899
Email: christopher.hudock@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by either regular U.S. mail or inter-office delivery.

/s/Christopher H. Hudock
Christopher H. Hudock
Assistant United States Attorney